**EXHIBIT A**

Deed Book 59726 Pg 496
Filed and Recorded Feb-19-2019 05:00pm
2019-0119473
Georgia Intangible Tax Paid $0.00
CATHELENE ROBINSON
Clerk of Superior Court
Fulton County, Georgia

PERRIE & ASSOCIATES, PC
100 S. GALLERIA PARKWAY
SUITE 1170
ATLANTA, GA 30339
PHONE: 770-579-2700
File No.: 190064CM

Parcel #
14-0195-0006-031-5

**DEED TO SECURE DEBT**

STATE OF GEORGIA
COUNTY OF COBB

THIS INDENTURE, made this 23rd day of January, 2019, between **NEW VISION REALTY & INVESTMENTS, INC.** of the State of Georgia, County of Fulton (hereinafter called the "Grantor") and **KRT PROPERTIES, LLC,** (hereinafter called the "Grantee"), whose address is 112 Andi Lane, Anderson, SC 29626.

**WITNESSETH:**

WHEREAS, Grantor is justly indebted to grantee in the sum of Forty Thousand and 00/100 DOLLARS ($40,000.00) in lawful money of the United States, and has agreed to pay the same, with interest thereon, according to the terms of a certain Note (the "Note") given by Grantor to Grantee, bearing even date herewith, with final payment being due on July 31st, 2019, the Note, by reference, being made a part hereof;

NOW, THEREFORE, in consideration of the premises and the sum hereinabove set forth, Grantor has granted, bargained, sold and conveyed, and by these presents does grant, bargain, sell and convey unto Grantee the following property; to-wit:

**SEE EXHIBIT 'A' ATTACHED HERETO AND MADE A PART HEREOF**

**TOGETHER WITH** all buildings, structures and other improvements now or hereafter located on the property hereinbefore described, or any part and parcel thereof; and

**TOGETHER WITH** all rights, title and interest of Grantor in and to the minerals, flowers, shrubs, crops, timber and emblements now or hereafter on the said property or under the above, the same or any part or parcel thereof; and

**TOGETHER WITH** all and singular the tenements, hereditaments, easements and appurtenances thereunto belonging or in any wise appertaining, and the reversion or reversions, remainder and remainders, rents, issues and profits thereof; and also all the estate, right, title, interest claim and demand whatsoever of Grantor of, in and to the same and of, in and to every part and parcel thereof; and

**TOGETHER WITH** all machinery, apparatus, equipment, fittings and fixtures, whether actually or constructively attached to said property and including all trade, domestic and ornamental fixtures, now or hereafter located in, upon or under said property or any part thereof and used or usable in connection with any present or future operation or enjoyment of said property and now owned or hereafter acquired by Grantor; and

**TOGETHER WITH** any and all awards or payments, including interest thereon, and the right to receive the same, as a result of (a) the exercise of the right of eminent domain, (b) the alteration of the grade of any street, or (c) any other injury to, taking of, or decrease in value of, the premises to the extent of all amounts which may be secured by this deed at the date of receipt of nay such award or payment by Grantee and of the reasonable attorney's fees, cost and disbursements incurred by Grantee in connection with the collection of such award of payment.

**TO HAVE AND TO HOLD** the said premises hereby granted (all of which are collectively referred to herein as the "Premises") to the use, benefit and behoof of the Grantee, forever, in FEE SIMPLE.

Grantor warrants that Grantor has good title to the Premises, and is lawfully seized and possessed of the Premises and every part thereof, and has the right to convey the same; that the Premises are unencumbered except as may be herein expressly provided; and that Grantor will forever warrant and defend the title to the Premises unto

Grantee against the claims of all persons whomsoever.

This instrument is a deed passing legal title pursuant to the laws of the State of Georgia governing loan or security deeds and is not a mortgage and is made and intended to secure the payment of the indebtedness of Grantor to Grantee evidenced by the Note in accordance with the terms thereof; together with any and all other indebtedness now owing or which may hereafter be owing by Grantor to grantee, however incurred and all renewal or renewals and extension or extensions of the Note or other indebtedness, either in whole or in part (all of which are collectively referred to herein as the "Secured Indebtedness").

**AND GRANTOR FURTHER COVENANTS AND AGREES WITH GRANTEE, as follows:**

1. Grantor shall pay to Grantee the Secured Indebtedness with interest thereon as the Note and this Deed provides.

2. Grantor shall pay, when due and payable, (a) all taxes, assessments, general or special, and other charges levied on, or assessed, placed or made against the Premises, this instrument or the Secured Indebtedness or any interest of the Grantee in the Premises or the obligations secured hereby; (b) premiums on policies of fire and other hazard insurance covering the Premises, as required in Article 3 herein; (c) premiums on all collaterally pledged life insurance policies, if any; (d) premiums for mortgage insurance, if this deed and the Note are so insured; and (e) ground rents or other lease rentals, if any payable by Grantor. Grantor shall pay to Grantee, together with and in addition to the payments of principal and interest payable under the terms of the Note secured hereby, on the installment-due date of the Note, until said Note is fully paid or until notification from Grantee to the contrary, an amount reasonably sufficient (as estimated by Grantee) to provide Grantee with funds to pay said taxes, assessments, insurance premiums, rents and other charges next due so that Grantee will have sufficient funds on hand to pay same thirty (30) days prior to the due date thereof. In no event shall Grantee be liable for any interest on any amount paid to it as herein required, and the money so received may be held and commingled with its own funds, pending payment or application thereof as herein provided. Grantor shall furnish to Grantee, at least thirty (30) days before the date on which same swill become past due, an official statement of the amount of said taxes, assessments, insurance premiums and rents next due, and Grantee shall pay said charges to the amount of the then unused credit therefore as and when they become severally due and payable. An official receipt therefore shall be conclusive evidence of such payment and of the validity of such charges. Grantee may, at its option, pay any of these charges when payable, either before or after they become past due, without notice, or make advances therefore in excess of the then amount of credit for said charges. The excess amount advanced shall be immediately due and payable to Grantee and shall become part of the Secured Indebtedness and bear interest at the rate as in the Note from date of advancement. Grantee may apply credits held by it for the above charges, or any part thereof, on account of any delinquent installments of principal or interest or any other payments maturing or due under this instrument, and the amount of credit existing at any time shall be reduced by the amount thereof paid or applied as herein provided.

The amount of the existing credit hereunder at the time of any transfer of the Premises shall, without assignment thereof, inure to the benefit of the successor-owner of the Premises and shall be applied under the subject to all of the provisions hereof. Upon payment in full of the Secured Indebtedness, the amount of any unused credit shall be paid over tot he person entitled to receive it In the event of the passage, after the date of this instrument, of any law or ordinance of the Untied States, the State or any political subdivision thereof, wherein the Premises are situated, or any decision by a court of competent jurisdiction, creating or providing for any tax, assessment or charge against the Premises, this instrument or the Secured Indebtedness or any interest of the Grantee in the Premises or the obligations secured hereby, that is to be paid by Grantee, the Secured Indebtedness shall, at the option of Grantee, become immediately due and payable and, in the event payment thereof is not made forthwith, Grantee may take, or cause to be taken, such action or proceeding as may be taken hereunder in the case of any other default in the payment of the indebtedness.

3. (a) Grantor shall keep the Premises insured for the benefit of Grantee against loss or damage by fire, lightning, windstorm, hail, explosion, riot, riot attending a strike, civil commotion, aircraft, vehicles and smoke and such other hazards as Grantee may from time to time require, all in amounts approved by Grantee not exceeding 100% of full insurable value (in no event shall the amount of insurance be less than the amount of the Secured Indebtedness); all insurance herein provided for shall be in form and companies approved by Grantee; and, regardless of the types or amounts of insurance required and approved by Grantee. Grantor shall assign and deliver

to Grantee, as collateral and further security for the payment of the Secured Indebtedness, all policies of insurance which insure against any loss or damage to the Premises, with loss payable to Grantee, without contribution by Grantee, pursuant to the New York Standard or other mortgagee clause satisfactory to Grantee. If Grantee, by reason of such insurance, receives any money for loss or damage, such amount may, at the option of Grantee, be retained and applied by Grantee toward payment of the Secured Indebtedness, or be paid over, wholly or in part, to Grantor for the repair or replacement of the Premises or any part thereof, or for any other purpose or object satisfactory to Grantee, but Grantee shall not be obligated to see to the proper application of any amount paid over to grantor.

(b) Not less that 30 days prior to the expiration date of each policy of insurance required of Grantor pursuant to this Article, and of each policy of insurance held as additional collateral to secure Secured Indebtedness, Grantor shall deliver to Grantee a renewal policy or policies marked "premium paid" or accompanied by other evidence of payment satisfactory to Grantee.

(c) In the event of a foreclosure of this deed, the purchaser of the Premises shall succeed to all rights of Grantor including any right to unearned premiums, in and to all policies of insurance assigned and delivered to Grantee, with respect to all property conveyed and to be conveyed by this deed, pursuant to the provisions of this Article.

4. Grantor shall maintain the Premises in good condition and repair, shall not commit or suffer any waste to the Premises, and shall comply with, or cause to be complied with, all statutes, ordinances and requirements of any governmental authority relating to the Premises or any part thereof. Grantor shall promptly repair, restore, replace or rebuild any part of the Premises, now or hereafter encumbered by this deed, which may be affected by any proceeding of the character referred to in Article 6 herein. No part of the Premises, including but not limited to, any building, structure, parking lot, driveway, landscape scheme, timber or other ground improvement, or other property, now or hereafter conveyed as security by or pursuant to this deed, shall be removed, demolished or materially altered without the prior written consent of Grantee. Grantor shall complete, within a reasonable time and pay for any building, structure or other improvement at any time in the process of construction on the property herein conveyed. Grantor shall not initiate, join in or consent to any change in any private restrictive covenant, zoning ordinance or other public or private restrictions limiting or defining the uses which may be made of the Premises or any part thereof. Grantee and any persons authorized by Grantee shall have the right to enter and inspect the Premises at all reasonable times and access thereto shall be permitted for that purpose.

5. Grantor shall execute and deliver (and pay the cost of preparation and recording thereof) to Grantee and to any subsequent holder from time to time, upon demand, any further instrument or instruments, including, but not limited to, security deeds, security agreements, financing statements, assignments and renewals and substitution notes, so as to reaffirm to correct and to perfect the evidence of the obligation hereby secured and the legal security title of Grantee to all or any part of the Premises, intended to be hereby conveyed, whether or not conveyed, later substituted for, or acquired subsequent to the date of this deed and extensions or modifications thereof, grantor, upon request made either personally or by mail, shall certify by a writing, duly acknowledged, to Grantee or to any proposed assignee of this deed, the amount of principal and interest then owing on the Secured Indebtedness and whether or not any offsets or defenses exist against the Secured Indebtedness, within 6 days in case the request is made personally, or within 10 days after the mailing of such request in case the request is made by mail.

6. Grantee shall be subrogated to all right, title, lien or equity of all persons to whom it may have paid monies in settlement of liens, charges or in acquisition of title of or for its benefit hereunder, or for the benefit and account of Grantor at the time of making the loan evidenced by this security deed, or subsequently under any of the provisions herein.

7. Notwithstanding any taking of any property, herein conveyed and agreed to be conveyed, by eminent domain, alteration of the grade of any street or other injury to, or decrease in value of the Premises by any public or quasi-public authority or corporation, Grantee shall continue to pay principal and interest on the Secured Indebtedness and any reduction in the Secured Indebtedness resulting from the application by Grantee of any award or payment for such taking, alteration, injury or decrease in value of the Premises, as hereinafter set forth, shall be deemed to take effect on the date of such receipt; and said award or payment may, at the option of Grantee, be retained and applied by Grantee toward payment of the Secured Indebtedness, or be paid over, wholly or in part to Grantor for the purpose of altering, restoring or rebuilding any part of the Premises which may have been altered,

damaged or destroyed as a result of any such taking, alteration of grade, or other injury to the Premises, or for any other purpose or object satisfactory to Grantee, but Grantee shall not be obligated to see to the application of any amount paid over to Grantor. If, prior to the receipt by Grantee of such award or payment, the Premises shall have been sold on foreclosure of this deed, Grantee shall have the right to receive said award or payment to the extent of any deficiency found to be due upon such sale, with legal interest thereon, whether or not a deficiency judgment on this deed shall have been sought or recovered or denied, and of the reasonable counsel fees, cost and disbursements incurred by Grantee in connection with the collections of such award or payment.

    8. Upon the occurrence of any of the following events (herein called an "event of default"):

    (a) should Grantor fail to pay the Secured Indebtedness, or any part thereof, when and as the same shall become due and payable;

    (b) should any warranty of Grantor herein contained, or contained in any instrument, transfer, conveyance, assignment of loan agreement given with respect tot he Secured Indebtedness, prove untrue or misleading in any material aspect;

    (c) should the Premises be subject to actual or threatened waste, or any part thereof be removed, demolished or materially altered so that the value of the Premises be diminished except as provided for in Article 7 herein;

    (d) should any federal tax lien or claim of lien for labor or material be filed of record against Grantor or the Premises and not be removed by payment or bond within 30 days from date of recording;

    (e) should any claim of priority to this deed by title, lien or otherwise be asserted in any legal or equitable proceeding;

    (f) should Grantor make any assignment for the benefit of creditors, or should a receiver, liquidator or trustee of Grantor or of any of Grantor's property be appointed, or should any petition for the bankruptcy, reorganization or arrangement of Grantor, pursuant to the Federal Bankruptcy Act or any similar statue, be filed, or should grantor be adjudicated bankrupt or insolvent, or should Grantor, if a corporation, be adjudicated or dissolved or its charter expire or be revoked, or, if a partnership or business association be dissolved or partitioned or, if a trust, be terminated or expire;

    (g) should Grantor fail to keep, observe, perform, carry out and execute in every particular the covenants, agreements, obligations and conditions set out in this deed, or in the Note, or in any instrument, transfer, conveyance, assignment or loan agreement given with respect tot he Secured Indebtedness; or

    (h) should any event occur under any instrument, deed or agreement, given or made by Grantor to or with any third party, which would authorize the acceleration of any debt to any such third party;

    (i) should all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument;

    Then and thereupon Grantee may do any one or more of the following:

    (i) enter upon and take possession of the Premises without the appointment of a receiver, or an application therefore, employ a managing agent of the Premises and let the same, either in its own name, or in the name of Grantor; and receive the rents, incomes, issues and profits of the Premises and apply the same, after payment of all necessary charges and expenses, on account of the Secured Indebtedness, and Grantor will transfer and assign to grantee, in form satisfactory to Grantee, Grantor's lessor interest in any lease now or hereafter affecting the whole or any part of the premises;

    (ii) pay any sums in any form or manner deemed expedient by Grantee to protect the security of the instrument or to cure any event of default other than payment of interest or principal on Secured Indebtedness; make any payment hereby authorized to be made according to any bill, statement, or estimate furnished or procured from

the appropriate public officer of the party claiming payment without inquiry into the accuracy or validity thereof, and the receipt of any such public officer or party in the hands of Grantee shall be conclusive evidence of the validity and amount of items so paid, in which event the amounts so paid, with interest thereon form the date of such payment at the rate as in the Note shall be added to and become a part of the Secured Indebtedness and be immediately due and payable to Grantee; and Grantee shall be subrogated to any encumbrance, lien, claim or demand and to all the rights and securities for the payment thereof, paid or discharged with the principal sum secured hereby or be Grantee under the provisions hereof, and any such subrogation rights shall be additional an cumulative security to this instrument;

(iii) declare the entire Secured Indebtedness immediately due, payable and collectible, without notice to Grantor, regardless of maturity, and in that event, the entire Secured Indebtedness shall become immediately due, payable and collectible; and thereupon, Grantee may sell and dispose of the Premises at public auction, at the usual place for conducting sales at the courthouse in the county where the Premises or any part thereof may be, to the highest bidder for cash, first advertising the time, terms and place of such sale by publishing a notice thereof once a week for four (4) consecutive weeks in a newspaper in which sheriff's advertisements are published in said county, all other notice being hereby waived by Grantor; and Grantee may thereupon execute and deliver to the purchaser at said sale a sufficient conveyance of the Premises in fee simple, which conveyance may contain recitals as to the happening of the default upon which the execution of the power of sale, herein granted, depends, and said recitals shall be presumptive evidence that all preliminary acts prerequisite to said sale and deed were in all things duly complied with; and Grantee, its agents, representatives, successors or assigns, may bid and purchase at such sale; and Grantor hereby constitutes and appoints Grantee or its assigns, agent and attorney in fact to make such recitals, sale and conveyance, and all of the acts of such attorney in fact are hereby ratified, and Grantor agrees that such recitals shall be binding and conclusive upon Grantor and that the conveyance to be made by Grantee, or its assigns, (and in the event of a deed in lieu of foreclosure, then as to such conveyance) shall be effectual to bar all right, title and interest, equity of redemption including all statutory redemption, homestead, dower, courtesy and all other exceptions of grantor, or its successors in interest, in and to said Premises; and Grantee or its assigns, shall collect the proceeds of such sale, reserving therefrom all unpaid Secured Indebtedness with interest then due thereon, and all amounts advanced by Grantee for taxes, assessments, fire insurance premiums and other charges, with interest at the rte as in the Note from date of payment, together with all cost an charges for advertising, and commissions for selling the Premises, and 15% of the aggregate amount due, as attorney's fees and pay over any surplus to grantor (in the event of deficiency Grantor shall immediately on demand from Grantee pay over to Grantee, or its nominee, such deficiency) and Grantor agrees that possession of the Premises during the existence of the Secured Indebtedness by Grantor, or any person claiming under Grantor, shall be that of tenant under Grantee, or its assigns, and, in case of a sale, as herein provided, grantor or any person in possession under Grantor, shall then become and be tenants holding over, and shall forthwith deliver possession to the purchaser at such sale, or be summarily dispossessed in accordance with the provisions of law applicable to tenants holding over; the power and agency hereby granted are coupled with an interest and are irrevocable by death or otherwise, and are in addition not any and al l other remedies which Grantor may have at law or in equity.

Grantee, in any action to foreclose this deed, or upon any event of default, shall be at liberty to apply for the appointment of a receiver of the rents and profits or of the Premises or both without notice, and shall be entitled to the appointment of such a receiver as a matter of right, without consideration of the value of the Premises as security for the amounts due the grantee, or the solvency of any person or corporation liable for the payment of such amounts.

In case of any sale under this deed by virtue of the exercise of the power herein granted, or pursuant to any order in any judicial proceedings or otherwise, the Premises or any part thereof may be sold in one parcel and as entirety, or in such parcels, manner or order as Grantee in its sole discretion may elect, and one or more exercise of the powers herein granted shall not extinguish or exhaust the power unless the entire Premises are sold or the Secured Indebtedness paid in full.

9. Grantor, for himself and family, hereby waives and renounces a ll homestead and exemption rights provided for by the Constitution and Laws of the United States or the State of Georgia, in and to the Premises as against the collection of the Secured Indebtedness, or any part thereof; and Grantor agrees that where, by the terms of the conveyance or the Note secured hereby, a day is named or a time fixed for the payment of any sum of money or the performance of any agreement, the time stated enters into the consideration and is of the essence of the whole contract.

10. Grantee shall have the right from time to time to sue for any sums, whether interest, principal or any installment of either or both, taxes, penalties, or any other sums required to be paid under the terms of this deed, as the same become due, without regard to whether or not all of the Secured Indebtedness shall be due on demand, and without prejudice to the right of Grantee thereafter to enforce any appropriate remedy against the Grantor, including an action of Foreclosure, or any other action, for a default or defaults by Grantor existing at the time of such earlier action was commenced.

11. The rights of Grantee, granted and arising under the clauses and covenants contained in this deed and the Note, shall be separate, distinct and cumulative of other powers and rights herein granted and all other rights which Grantee may have in law or equity and none of them shall be in exclusion of the others; and all of them are cumulative to the remedies for collection of indebtedness, enforcement of rights under security deeds, and preservation of security as provided at law. No act of Grantee shall be construed as an election to proceed under any one provision herein or under the Note to the exclusion of any other provision, or an election of remedies to the bar of any other remedy allowed at law or in equity, anything herein or otherwise to the contrary notwithstanding,

12. Every provision for notice and demand or request shall be deemed fulfilled by written notice and demand or request personally served on one or more of the persons who shall at the time hold the record title to the Premises, or on their heirs or successors, or mail by depositing it in any post office station or letter box, enclose din a postpaid envelope (a) addressed to such person or persons, or their heirs or successors, at his, their or its address last known to Grantee or (b) addressed to the street address for the Premises hereby conveyed.

13. Any indulgence or departure at any time by the Grantee from any of the provisions hereof, or of any obligation hereby secure, shall not modify the same or relate to the future or waive future compliance therewith by the Grantor. If more than one party shall execute this deed, the term "Grantor" shall mean all parties signing, and each of them, and each agreement, obligation and Secured Indebtedness of the Grantor shall be and mean the several as well as joint undertaking of each of them.

14. The words "Grantor" and "Grantee" whenever used herein shall include all individuals, corporations (and if a corporation, its officers, employees, agents or attorneys) and any and all other persons or entitles, and the respective heirs, executors, administrators, legal representatives, successors and assigns of the parties hereto, and all those holding under either of them, and the pronouns used herein shall include, when appropriate, either gender and both singular and plural, and the word "Note" shall also include one or more notes and the grammatical construction of sentences shall conform thereto.

**IN WITNESS WHEREOF**, this Indenture has been duly executed and sealed by Grantor; any such execution and sealing by a corporation has been carried out by its proper officers thereunto duly authorized; the date and year first above written.

SIGNED, SEALED and DELIVERED
in the presence of:

_____
Unofficial Witness

_____
NOTARY PUBLIC
MY COMMISSION EXPIRES:

NEW VISION REALTY & INVESTMENTS, INC.
(Grantor)

_____ (Seal)
By: DONALD COLEMAN
Title: CEO

# 1-4 FAMILY RIDER
(Assignment of Rents)

THIS 1-4 FAMILY RIDER is made this **23rd** day of **January 2019**, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Note to **KRT PROPERTIES, LLC**

(the "Lender") of the same date and covering the Property described in the Security Instrument and located at:

**2562 MEADOW LARK DRIVE, EAST POINT, GA 30344**

**1-4 FAMILY COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. ADDITIONAL PROPERTY SUBJECT TO THE SECURITY INSTRUMENT.** In addition to the Property described in Security Instrument, the following items now or hereafter attached to the Property to the extent they are fixtures are added to the Property description, and shall also constitute the Property covered by the Security Instrument: Building materials, appliances and goods of every nature whatsoever now or hereafter located in, on or used, or intended to used in connection with the Property, including, but not limited to, those for the purposes of supplying or distributing heating, cooling, electricity, gas, water, air and light, fire prevention and extinguishing apparatus, security and access control apparatus, plumbing, bath tubs, water heaters, water closets, sinks, ranges, stoves, refrigerators, dishwashers, disposals, washers, dryers, awnings, storm windows, storm doors, screens, blinds, curtains and curtain rods, attached mirrors, cabinets, paneling and attached floor coverings, all of which, including replacements and additions thereto, shall be deemed to be and remain a part of the Property covered by the Security Instrument. All of the foregoing together with the Property described in the Security Instrument (or the leasehold estate if the Security Instrument is on a leasehold) are referred to in this 1-4 Family Rider and the Security Instrument as the "Property."

**B. USE OF PROPERTY; COMPLIANCE WITH LAW.** Borrower shall not seek, agree to or make a change in the use of the Property or its zoning classification, unless Lender has agreed in writing to change. Borrower shall comply with all laws, ordinances, regulations and requirements of any governmental body applicable to the Property.

**C. SUBORDINATE LIENS.** Except as permitted by federal law, Borrower shall not allow any lien inferior to the Security Instrument to be perfected against the Property without Lender's prior written permission.

MULTISTATE 1-4 FAMILY RIDER
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3170 1/01

1 of 3

**D.    RENT LOSS INSURANCE.** Borrower shall maintain insurance against rent loss in addition to other hazards for which insurance is required by Section 5.

**E.    "BORROWER'S RIGHT TO REINSTATE" DELETED.** Section 19 is deleted.

**F.    BORROWER'S OCCUPANCY.** Unless Lender and Borrower otherwise agree in writing, Section 6 concerning Borrower's occupancy of the Property is deleted.

**G.    ASSIGNMENT OF LEASES.** Upon Lender's request after default, Borrower shall assign to Lender all leases of the Property and all security deposits made in connection with leases of the Property. Upon the assignment, Lender shall have the right to modify, extend or terminate the existing leases and to execute new leases, in Lender's sole discretion. As used in this paragraph G, the word "lease" shall mean "sublease" if the Security Instrument is on a leasehold.

**H.    ASSIGNEMENT OF RENTS; APPOINTMENT OF RECEIVER; LENDER IN POSSESSION.** Borrower absolutely and unconditionally assigns and transfers to Lender all the rents and revenues ("Rents") of the Property, regardless of to whom the Rents of the Property are payable. Borrower authorizes Lender of Lender's agents to collect the Rents, and agrees that each tenant of the Property shall pay the Rents to Lender or Lender's agents. However, Borrower shall receive the Rents until (i) Lender has given Borrower notice of default pursuant to Section 22 of the Security Instrument and (ii) Lender has given notice to the tenant(s) that the Rents are to be paid to Lender or Lender's agents. This assignment of Rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of default to Borrower: (i) all Rents received by Borrower shall be held by Borrower as trustee for the benefit of Lender only, to be applied to the sums secured by the Security Instrument; (ii) Lender shall be entitled to collect and receive all of the Rents of the Property; (iii) Borrower agrees that each tenant of the Property shall pay all Rents due and unpaid to Lender or Lender's agents upon Lender's written demand to the tenant; (iv) unless applicable law provides otherwise, all Rents collected by Lender or Lender's agents shall be applied first to the cost of taking control of and managing the Property and collecting the Rents, but not limited to, attorney's fees, receiver's fees, premiums on receiver's bonds, repair and maintenance costs, insurance premiums, taxes, assessments and other charges on the Property, and then to the sums secured by the Security Instrument; (v) Lender, Lender's agents or any judicially appointed receiver shall be liable to account for only those Rents actually received; and (vi) Lender shall be entitled to have a receiver appointed to take possession of and manage the Property and collect the Rents and profits derived from the Property without any showing as to the inadequacy of the Property as security.

If the Rents of the Property are not sufficient to cover the costs of taking control of and managing the Property of collecting the Rents any funds expended by Lender for such purposes shall become indebtedness of Borrower to Lender secured by the Security Instrument pursuant to Section 9.

MULTISTATE 1-4 FAMILY RIDER
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3170 1/01

2 of 3

Borrower represents and warrants that Borrower has not executed any prior assignment of the Rents and has not performed; and will not perform, any act that would prevent Lender from exercising its rights under this paragraph.

Lender, or Lender's agents or a judicially appointed receiver, shall not be required to enter upon, take control of or maintain the Property before or after giving notice of default to Borrower. However, Lender, or Lender's agents or a judicially appointed receiver, may do so at any time when a default occurs. Any application of Rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of Rents of the Property shall terminate when all the sums secured by the Security Instrument are paid in full.

**I.   CROSS-DEFAULT PROVISION.** Borrower's default or breach under any note or agreement in which Lender has an interest shall be a breach under the Security Instrument and Lender may invoke any of the remedies permitted by the Security Instrument.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this 1-4 Family Rider.

**NEW VISION REALTY & INVESTMENTS, INC.**
(Borrower)

_____(SEAL)
BY: DONALD COLEMAN, CEO

MULTISTATE 1-4 FAMILY RIDER
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3170 1/01

3 of 3

# EXHIBIT "A"
## LEGAL DESCRIPTION

**AS TO LOT 5:**

ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LOT 195 OF THE 14TH DISTRICT OF FULTON COUNTY, GEORGIA, BEING LOT 5, UNIT ONE, DODSON VALLEY SUBDIVISION, AS PER PLAT DATED MAY 10, 1957, RECORDED IN PLAT BOOK 60, PAGE 96, FULTON COUNTY, GEORGIA RECORDS, BEING MORE PARTICULARLY DESCRIBED AS 2562 MEADOWLARK DRIVE, WHICH PLAT IS HEREBY INCORPORATED BY REFERENCE THERETO AND MADE A PART OF THIS DESCRIPTION.

**AS TO LOT 6:**

ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LOT 195 OF THE 14TH DISTRICT OF FULTON COUNTY, GEORGIA, BEING LOT 6, DODSON VALLEY SUBDIVISION, UNIT TWO, AS PER PLAT RECORDED AT PLAT BOOK 77, PAGE 84, FULTON COUNTY, GEORGIA.

PROPERTY BEING MORE COMMONLY KNOWN AS 2562 MEADOWLARK DRIVE, ACCORDING TO THE PRESENT SYSTEM OF NUMBERING PROPERTIES IN FULTON COUNTY, GEORGIA.

Deed Book 59726 Pg 506
CATHELENE ROBINSON
Clerk of Superior Court
Fulton County, Georgia

GEORGIA

GRANTOR: NEW VISION REALTY & INVESTMENTS, INC.

LENDER: KRT PROPERTIES, LLC

DATE OF SECURITY DEED: January 23, 2019

## WAIVER OF BORROWER'S RIGHTS

BY EXECUTION OF THIS PARAGRAPH, GRANTOR EXPRESSLY: (1) ACKNOWLEDGES THE <u>RIGHT TO ACCELERATE</u> THE DEBT AND THE <u>POWER OF ATTORNEY</u> GIVEN HEREIN TO LENDER TO SELL THE PREMISES BY NONJUDICIAL FORECLOSURE UPON DEFAULT BY GRANTOR WITHOUT ANY JUDICIAL HEARING AND WITHOUT ANY NOTICE OTHER THAN SUCH NOTICE AS IS REQUIRED TO BE GIVEN UNDER THE PROVISIONS HEREOF; (2) <u>WAIVES</u> ANY AND ALL RIGHTS WHICH GRANTOR MAY HAVE UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE CONSTITUTION OF THE UNITED STATES, THE VARIOUS PROVISIONS OF THE CONSTITUTION FOR THE SEVERAL STATES, OR BY REASON OF ANY OTHER APPLICABLE LAW TO NOTICE AND TO JUDICIAL HEARING PRIOR TO THE EXERCISE BY LENDER OF ANY RIGHT OR REMEDY HEREIN PROVIDED TO LENDER, EXCEPT SUCH NOTICE AS IS SPECIFICALLY REQUIRED TO BE PROVIDED HEREOF; (3) ACKNOWLEDGES THAT GRANTOR HAS READ THIS DEED AND SPECIFICALLY THIS PARAGRAPH AND ANY AND ALL QUESTIONS REGARDING THE LEGAL EFFECT OF SAID DEED AND ITS PROVISIONS HAVE BEEN EXPLAINED FULLY TO GRANTOR AND GRANTOR HAS BEEN AFFORDED AN OPPORTUNITY TO CONSULT WITH COUNSEL OF GRANTOR'S CHOICE PRIOR TO EXECUTING THIS DEED; (4) ACKNOWLEDGES THAT ALL WAIVERS OF THE AFORESAID RIGHTS OF GRANTOR HAVE BEEN MADE KNOWINGLY, INTENTIONALLY AND WILLINGLY BY GRANTOR AS PART OF A BARGAINED-FOR LOAN TRANSACTION; AND (5) AGREES THAT THE PROVISIONS HEREOF ARE INCORPORATED INTO AND MADE A PART OF THE SECURITY DEED.

READ AND AGREED BY GRANTOR:

Signed, sealed and delivered
in the presence of                          NEW VISION REALTY & INVESTMENTS, INC. - Grantor

_____                     _____ (SEAL)
Witness                                     BY: DONALD COLEMAN, CEO

_____
Notary Public

## CLOSING ATTORNEY'S AFFIDAVIT

Before the undersigned attesting officer personally appeared the undersigned closing attorney, who having been first duly sworn according to law, states under oath as follows:

In closing the above loan, but prior to the execution of the Deed to Secure Debt and "Waiver of Borrower's Rights" by the Borrower, I reviewed with and explained to the Borrower the terms and provisions of the Deed to Secure Debt and particularly the provisions thereof authorizing the Lender to sell the secured property by a nonjudicial foreclosure under a power of sale, together with the "Waiver of Borrower's Rights" and informed the Borrower of Borrower's rights under the Constitution of the State of Georgia and the Constitution of the United States to notice and a judicial hearing prior to such foreclosure in the absence of a knowing, intentional and willing contractual waiver by Borrower of Borrower's rights. After said review with and explanation to Borrower, Borrower executed the Deed to Secure Debt and "Waiver of Borrower's Rights."

Based on said review with and explanation to the Borrower, it is my opinion that Borrower knowingly, intentionally and willingly executed the waiver of Borrower's constitutional rights to notice and judicial hearing prior to any such nonjudicial foreclosure.

Sworn to and subscribed before me on the date set forth above.

_____                     _____
Notary Public                               Closing Attorney

## FORECLOSURE CLOSING DISCLOSURE

O.C.G.A Section 7-1-1014(3) requires that we inform you that if you fail to meet any condition or term of the documents that you sign in connection with obtaining a mortgage loan you may lose the property that serves as collateral for the mortgage loan through foreclosure.

Borrower represents and warrants to the lender as follows: (1) That this loan is for BUSINESS PURPOSES only; (2) That all loan proceeds will only be used for BUSINESS PURPOSES and NOT for CONSUMER OR PERSONAL reasons; (3) That the subject real estate is not and will not be occupied by the borrower as their residence.

NEW VISION REALTY & INVESTMENTS, INC.

_____ (SEAL)
BY: DONALD COLEMAN, CEO