UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 7 |
| | ) | |
| NEW VISION REALTY & INVESTMENTS, INC., | ) ) | CASE NO. 21-55752-PMB |
| | ) | JUDGE BASIER |
| Debtor. | ) | |
| - - - - - - - - - - - - - - - - - - - - | ) | - - - - - - - - - - - - - - - - - - - - |
| S. GREGORY HAYS, as Chapter 7 Trustee for the Bankruptcy Estate of New Vision Realty & Investments, Inc., | ) ) ) | |
| | ) | |
| Movant, | ) | |
| v. | ) | CONTESTED MATTER |
| | ) | |
| NORMANDY CAPITAL TRUST, KRT PROPERTIES, LLC, FULTON COUNTY TAX COMMISSIONER, CITY OF EAST POINT, NEW VISION REALTY & INVESTMENTS, INC., | ) ) ) ) ) ) | |
| | ) | |
| Respondents. | ) | |

**TRUSTEE'S MOTION FOR AUTHORITY TO (A) SELL PROPERTY OF THE
BANKRUPTCY ESTATE FREE AND CLEAR OF ALL LIENS, INTERESTS, AND
ENCUMBRANCES AND (B) DISBURSE CERTAIN PROCEEDS AT CLOSING**

COMES NOW S. Gregory Hays, as Chapter 7 Trustee ("**Trustee**") for the bankruptcy

estate of New Vision Realty & Investments, Inc. ("**Debtor**"), pursuant to 11 U.S.C. §§ 363(b),

(f), and (m), and Fed. R. Bankr. P. 2002(a)(2), 6004(a), 6004(c) and 9014, by and through

undersigned counsel, and files *Trustee's Motion for Authority to (A) Sell Property of the

Bankruptcy Estate Free and Clear of Liens, Interests, and Encumbrances and (B) Disburse*

*Certain Proceeds at Closing* (the "**Sale Motion**").  In support of the Sale Motion, Trustee respectfully shows the Court as follows:

### Venue and Jurisdiction

1.      This Court has jurisdiction over this Sale Motion under 28 U.S.C. §§ 157 and 1334.  Venue of this case in this District is proper under 28 U.S.C. §§ 1408 and 1409.  This Sale Motion is a core proceeding under 28 U.S.C. § 157(b)(2).

### Background

#### *a. General Background*

2.      On August 2, 2021 (the "**Petition Date**"), Debtor filed a voluntary petition for relief under Chapter 7 of Title 11 of the United States Code, initiating Case No. 21-55752-PMB (the "**Bankruptcy Case**" or "**Case**").

3.      On August 23, 2021, Debtor filed under penalty of perjury its *Schedules "A"* through *"J",* and *Other Bankruptcy Documents* [Doc. No. 18] (the "**Sworn Schedules**").

4.      The Trustee was thereafter appointed the duly acting Chapter 7 trustee in the Case under 11 U.S.C. § 701(a)(1), and he remains in this role.

5.      At the commencement of the Case, the bankruptcy estates were created under 11 U.S.C. § 541(a) (collectively, the "**Bankruptcy Estate**"), and the Bankruptcy Estate includes all Debtor's legal or equitable interests in property as of the commencement of the Case and any interest in property that the Bankruptcy Estate acquired after commencement of the Case.  11 U.S.C. §§ 541(a)(1) and (7).

6.      Trustee is the sole representative of the Bankruptcy Estate.  11 U.S.C. § 323(a).

7.      The duties of Trustee include his obligation to "collect and reduce to money the property of the estate . . . ." 11 U.S.C. § 704(1).

8.      On August 27, 2021, Trustee filed his *Application for Appointment of Attorneys* [Doc. No. 23], and on September 29, 2021, the Court entered an *Order* [Doc. No. 51] authorizing the appointment of Arnall Golden Gregory LLP as attorneys for Trustee.

### b. The Property

9.      On its Sworn Schedules, *Schedule A/B: Assets – Real and Personal Property*, Debtor scheduled its sole ownership of that certain real property known generally as 2562 Meadow Lark Drive, East Point, Fulton County, Georgia 30344 (the "**Property**"), with a value of $288,400.00 [Doc. No. 18, page 5 of 20].

### c. Alleged Liens, Interests, and Encumbrances

10.      On its Sworn Schedules, *Schedule D: Creditors Who Have Claims Secured by Property*, Debtor scheduled the purported secured claims in the Property of: (a) Normandy Capital Trust ("**Normandy**") in the amount of $198,377.11[1]; and (b) KRT Properties LLC ("**KRT**")[2] in the amount of $40,000.00 [Doc. No. 18, at page 7 of 20].

11.      Trustee has obtained a full title examination report for the Property dated September 15, 2021 (the "**Title Report**"), which confirmed (a) the security interest and lien of Normandy and KRT.   The Title Report reflected no other liens, interests, claims, or encumbrances on or against the Property with the exception of the outstanding 2021 county *ad valorem* real property taxes due (a) Fulton County Tax Commissioner ("**Fulton County**")[3] in the

---

[1]      Normandy filed a secured proof of claim (Claim No. 2) in the amount of $198,377.11 ($175,000.00 as secured and $23,377.11 as unsecured).

[2]      KRT filed a secured proof of claim (Claim No. 1) in the amount of $87,599.14.   KRT will be paid in full at Closing in full satisfaction of Claim No. 1.

[3]      Fulton County filed a secured proof of claim (Claim No. 3) in the amount of $1,535.56. Fulton County will paid in full at Closing in full satisfaction of Claim No. 3.

amount of $1,535.56; (b) the City of East Point ("**East Point**") in the amount of $996.84; and (c) the Bankruptcy Estate's 2022 pro-ration of *ad valorem* real property taxes due Fulton County and East Point.

### d. The Security Interest of Normandy is the Subject of a Bona Fide Dispute

12.    Trustee has determined that the security deed of Normandy was not properly attested and therefore, avoidable by Trustee, in his role as a hypothetical bona fide purchaser.

13.    In this regard, on September 24, 2021, Trustee filed a *Complaint* against Normandy, initiating Adversary Proceeding No. 21-05101-PMB (the "**Adversary Proceeding**"), seeking avoidance of Normandy's security deed under 11 U.S.C. § 544(a)(3).

14.    The Adversary Proceeding remains pending.

### d. Filed Claims Against the Bankruptcy Estate

15.    The total of the filed claims against the Bankruptcy Estate is $342,504.81.  Of the claims filed: (a) $264,134.70 are filed as secured claims; (b) $45,228.00 are filed as priority unsecured claims; and (c) $33,142.11 are filed as non-priority, general unsecured claims.  The deadline to file non-government proofs of claim was December 1, 2021 [Doc. No. 31].  The deadline to file government proofs of claim was and January 31, 2022.  [Doc. No. 31].

### Request for Authority to Sell Property of the Estate
### Free and Clear of all Liens, Interests, and Encumbrances
### Pursuant to 11 U.S.C. §§ 363(b) and (f)

16.    On March 7, 2022, Trustee filed his *Application to Employ Real Estate Agent Under Listing Agreement* [Doc. No. 89], seeking authority to employ Humphries & King Realty and John V. Ball (collectively, the "**Broker**") as the listing agent for the Bankruptcy Estate, at a starting list price of $409,900.00 (the "**List Price**") with a six percent (6%) commission of the sale price. On March 8, 2022, the Court entered an *Order* [Doc. No. 90], authorizing Trustee's

employment of the Broker, subject to objection.

17.    After much negotiation, Trustee entered into a *Purchase and Sale Agreement* for the sale of the Property to Rezwanul Rajib (the "**Purchaser**"), "as is, where is," for a sale price of $407,000.00 (the "**Purchase Price**"), subject to Bankruptcy Court approval (the "**Contract**"). A true and correct copy of the Contract is attached hereto and incorporated herein by reference as Exhibit "A."

18.    The Purchaser was procured through the efforts of Trustee and his Broker, is a *bona fide* purchaser, and is not an insider of Debtor, Trustee, or the Broker.  The Purchaser has submitted an earnest money deposit of $8,200.00.

19.    Trustee's proposed Contract for a Purchase Price of $407,000.00 is: (a) the highest and best offer that Trustee has received; (b) subject to no contingencies; and (c) an appropriate selling price for the Property.

20.    Subject to Bankruptcy Court approval, the closing of the sale of the Property is currently scheduled for June 14, 2022 (the "**Closing**").

## Legal Analysis

### a. Sale Free and Clear

21.    Section 363 of the Bankruptcy Code authorizes a trustee "after notice and a hearing . . . [to] use, sell, or lease, other than in the ordinary course of business, property of the estate . . . ." 11 U.S.C. § 363(b)(1).  Section 105 of the Bankruptcy Code grants this Court the authority to "issue any order, process, or judgment necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

22.    The standard to grant a sale of property outside of the ordinary course of business is the sound business judgment of the trustee.  *In re Chateaugay*, 973 F.2d 141 (2d Cir. 1992);

*Stephens Indus. v. McClung*, 789 F.2d 386, 390 (6th Cir. 1986); *In re Abbotts Dairies of Penn., Inc.*, 788 F.2d 143 (3d Cir. 1986); *Committee of Equity Security Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1071 (2d Cir. 1983).  In this regard, a trustee's showing need not be exhaustive; rather, a trustee is "simply required to justify the proposed disposition with sound business reason." *In re Baldwin United Corp.*, 43 B.R. 888, 906 (Bankr. S.D. Ohio 1984).

23.      In turn, Section 363(f) of the Bankruptcy Code authorizes a trustee to sell property under 11 U.S.C. § 363(b) free and clear of any interest in the subject property if, among other things, the price at which the property is to be sold is greater than the aggregate of the liens on such property, or if such interest is the subject of a bona fide dispute.  11 U.S.C. § 363(f).  Specifically, that code section provides:

> (f) The trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if-
>
> (1)      applicable nonbankruptcy law permits sale of such property free and clear of such interest;
> (2)      such entity consents;
> (3)      such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
> (4)      such interest is in bona fide dispute; or
> (5)      such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

*Id.*

24.      As set forth above and below, Trustee can, under 11 U.S.C. § 363(f), sell the Property free and clear of all liens, claims, interests, and encumbrances with any lien (to the extent valid, perfected, enforceable, and unavoidable) attaching to the proceeds of the sale with the same priority and extent as it had in the Property.

25.      Normandy, KRT, Fulton County, and East Point, have the only liens on or against the Property, and the sum of those liens is approximately $290,000.00.  As a result, the proposed

Purchase Price is significantly greater than the amounts owed to Normandy, KRT, Fulton County, and East Point, satisfying 11 U.S.C. § 363(f)(3). Additionally, the security interest of Normandy is the subject of a *bona fide* dispute, satisfying 11 U.S.C. § 363(b)(4). In sum, Trustee can sell the Property free and clear of the liens or interests of Normandy, KRT, Fulton County, and East Point.

26.    Notably, the proposed sale of the Property is one not in the ordinary course of business, as provided by 11 U.S.C. § 363(b). Any lien to the extent valid, perfected, enforceable and unavoidable will attach to the proceeds of the sale as provided by 11 U.S.C. § 363(f).

### b. Good Faith of Trustee and Purchaser

27.    Moreover, 11 U.S.C. § 363(m) provides that the reversal or modification on appeal of an authorization of a sale or lease of property does not affect the validity of the sale or lease under such authorization to an entity that purchased or leased the property in good faith. *See* 11 U.S.C. § 363(m).

28.    Although the Bankruptcy Code does not define good faith, courts have recognized that the kind of misconduct that would destroy a good faith status involves fraud, collusion between the purchaser and other offerors or the trustee, or an attempt to take grossly unfair advantage of other offerors. *See In re Abbott Dairies of Pa., Inc.*, 788 F.2d 143, 147 (3d Cir. 1986).

29.    Trustee and Purchaser have proceeded in good faith, and the Purchaser is a *bona fide,* good-faith purchaser and not an insider of Debtor, Trustee, or the Broker. Consequently, Trustee and Purchaser are entitled to the protections of 11 U.S.C. § 363(m).

### Request for Authority to Disburse Certain Proceeds at Closing

30.    Trustee requests authority to have all sale proceeds paid to him at Closing and for authority to have paid at Closing: (a) the full loan payoff to KRT; (b) all outstanding *ad valorem* real property taxes to Fulton County (2021 anticipated in the amount of $1,535.56), and East Point (2021 anticipated in the amount of $996.84); (c) the Bankruptcy Estate's pro-ration of the 2022 *ad valorem* county real property taxes due Fulton County in the estimated amount of $690.00 and East Point in the estimated amount of $450.00 (based on the 2021 tax bills); (d) the real estate commission of six percent (6%) of the Purchase Price in the amount of $24,420.00; (e) any capital gains or other taxes related to the sale (none anticipated); (f) water and sewer liens (none anticipated); (g) all other costs of sale, or costs necessary to close a sale of the Property.

31.    All other distributions will be made only upon further order of the Court.

32.    To the extent funds are disbursed at Closing by a party other than Trustee, Trustee requests that such party be treated as Trustee's designated and authorized agent.

33.    Based on the above proposed distributions, Trustee estimates that the proposed sale will result in approximately $92,000.00 coming into the Bankruptcy Estate (and create the possibility of another approximately $190,000.00 coming into the Bankruptcy Estate once the Adversary Proceeding is resolved), all of which will be available to distribute in accordance with 11 U.S.C. § 726.  In other words, upon information and belief, the proposed sale of the Property to Purchaser will allow Trustee to make a meaningful distribution to holders of unsecured claims against the Bankruptcy Estate.  Indeed, the net proceeds from the proposed Sale is approximately eight times the amount of currently filed priority unsecured and non-priority general unsecured claims against the Bankruptcy Estate.  In other words, upon information and belief, the proposed

sale of the Property to Purchaser will allow the Trustee to make a meaningful distribution to the holders of unsecured claims against the Bankruptcy Estate.

**Other Relief Requested**

34.    In addition, Trustee requests that the Court waive the stay of the order approving the proposed sale as authorized under Rule 6004(h) of the Federal Rules of Bankruptcy Procedure.

35.    Finally, following notice to all creditors and parties in interest of the Sale Motion and the date of the Hearing, Trustee invites any and all parties wishing to submit a competing cash bid which exceeds the present Contract by **at least $10,000.00,** supported by earnest money of **at least two percent (2%) of the bid price**, with no contingencies, and the ability to close within ten (10) days from Bankruptcy Court approval, so long as earnest money is paid to the Trustee in good funds and any such bid is filed with the Court in the form of an objection to the Sale Motion by the objection deadline set forth in the related notice of hearing and objection deadline filed contemporaneously herewith.

WHEREFORE, Trustee respectfully requests that the Court enter an Order:

(a)    Granting the Sale Motion;

(b)    Authorizing and approving the Contract and the sale of the Property free and clear of all liens, interests, and encumbrances;

(c)    Authorizing the distribution of certain proceeds at Closing, as set forth herein;

(d)    Authorizing the proposed sale to be consummated immediately as allowed by Federal Rules of Bankruptcy Procedure Rule 6004(h); and

(e)    Granting such other and further relief as the Court deems just or appropriate.

Respectfully submitted this 12th day of May, 2022.

ARNALL GOLDEN GREGORY, LLP
*Attorneys for Trustee*

By: */s/ Michael J. Bargar*

171 17th Street, NW, Suite 2100
Atlanta, Georgia 30363-1031
Tele: (404) 873-7030 / Fax: (404) 873-7031

Michael J. Bargar
Georgia Bar No. 645709
michael.bargar@agg.com

18152067v1

EXHIBIT "A" FOLLOWS

## TRUSTEE'S PURCHASE AND SALE AGREEMENT

THIS PURCHASE AND SALE AGREEMENT (this "Agreement") is made and entered into by and between **S. GREGORY HAYS**, as and only as **Trustee in Bankruptcy for the Estates of NEW VISION REALTY & INVESTMENTS, INC. (Chapter 7 Case No. 21-55752-PMB)** (hereinafter referred to as "Seller") and **REZWANUL RAJIB** (hereinafter, "Purchaser");

### WITNESSETH:

1.  <u>Agreement to Sell and Purchase.</u>  For and in consideration of ONE DOLLAR ($1.00) in hand paid by Purchaser in favor of Seller, receipt of which is hereby acknowledged, the mutual covenants and agreements contained herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged by Seller and Purchaser, Seller hereby agrees to sell and convey to Purchaser, and Purchaser hereby agrees to purchase and take from Seller, free and clear of all liens and encumbrances as approved by the Bankruptcy Court (hereinafter defined) and subject to and in accordance with all of the terms and conditions of this Agreement, all that tract or parcel of land lying and being in **Land Lot 195, 14th District, Fulton County, Georgia, Lot 5, Unit One, and Lot 6, Unit Two, Dodson Valley Subdivision, and commonly known as 2562 Meadow Lark Drive, East Point, Georgia 30344,** together with all rights, ways and easements appurtenant thereto, and all buildings, structures and other improvements located on the land and all lighting fixtures, mechanical, plumbing, air conditioning and other systems and fixtures as are attached or affixed thereto (hereinafter called the "Property").

2.  <u>Purchase Price; Method of Payment.</u>  The aggregate purchase price for the Property (hereinafter referred to as the "Purchase Price") shall be **FOUR HUNDRED SEVEN THOUSAND AND NO/100S DOLLARS ($407,000.00)**. Purchaser shall pay to Seller at Closing (as subsequently defined) the Purchase Price, after crediting the Earnest Money, and subject to the pro-rations and adjustments hereinafter described, as follows:

> Purchaser shall pay the Purchase Price to Seller at Closing in cash or cash equivalent. Purchaser's obligation to close shall not be subject to any financial contingency unless set forth hereafter on **EXHIBIT "C."**

3.  <u>Earnest Money.</u>  Prior to or contemporaneously with Purchaser's execution of this Agreement, Purchaser has delivered to Seller a check drawn upon good funds in the amount of **EIGHT THOUSAND TWO HUNDRED AND NO/100S DOLLARS ($8,200.00)** (the "Earnest Money"). Seller shall, within five (5) business days following receipt, place the Earnest Money in an escrow account of Seller's choosing. All parties to this Agreement acknowledge that Seller may deposit the Earnest Money in escrow/trust account and that Seller will be entitled to retain the interest earned on said Earnest Money deposit. If the sale hereunder is consummated in accordance with the terms hereof, the Earnest Money shall be applied as part payment of the Purchase Price to be paid by Purchaser at the Closing. In the event any earnest money check is not honored for any reason, by the bank upon which it is drawn, Seller shall promptly notify Purchaser. Purchaser shall have 3 banking days after notice to deliver good funds to Seller. In the event Purchaser does not timely deliver good funds, the Seller shall have the right to terminate this Agreement upon written notice to the Purchaser. In the event of any default in the performance of the terms of this

Agreement by Purchaser, the Seller may elect to accept the Earnest Money as liquidated damages in full settlement of any claim for damages and/or seek to enforce specific performance rights and obligations against the Purchaser under the terms of this Agreement. In the event Purchaser fails to pay any portion of the Purchase Price, Purchaser shall be considered to have breached the Agreement and Seller shall have the right to re-offer the Property for sale to others and to demand liquidated damages equal to the amount of the Earnest Money and/or demand specific performance. The parties acknowledge the difficulty of accurately estimating Seller's damages in the event of Purchaser's default and acknowledge that the amount of the Earnest Money is a reasonable pre-estimate of the probable loss to Seller resulting from Purchaser's default. In such event, the Earnest Money shall constitute liquidated damages and shall not be deemed a penalty. In the event this Agreement is terminated by Purchaser in accordance with any right of Purchaser to do so under the terms hereof, the Earnest Money shall be returned to Purchaser.

4.    Access and Inspection; Examination by Purchaser. Examination Period.

(a)    Purchaser acknowledges that Purchaser has had an opportunity to inspect the Property and accepts the Property in its present condition. Purchaser and Seller acknowledge that Seller has no obligation to correct any objections Purchaser may have or to make any repairs to the Property. The Property is sold "AS IS, WHERE IS" AND WITH ALL FAULTS, including but not limited to lead-based paint hazards and damage from termite and other wood-destroying organisms. Purchaser agrees to indemnify and hold harmless Seller from and against any and all loss, costs, claims, injuries, and/or damages arising out of or relating to the acts of Purchaser or Purchaser's agents on the Property.

(b)    Notwithstanding anything herein to the contrary, Seller's responsibility in connection with the Property shall cease upon Purchaser's acceptance of the Property.

5.    Closing. The closing of the purchase and sale of the Property, hereinafter called "Closing", shall take place on or before June 14, 2022, or within ten (10) days following approval of the sale by the Bankruptcy Court as provided in paragraph 31 hereof (herein called the "Closing Date"), at the offices of Seller or Campbell & Brannon, LLC, 5565 Glenridge Connector, Suite 350, Atlanta, Georgia 30342; Telephone: 770.396.8535, or at such other place as Seller and Purchaser may mutually agree upon. At the Closing, all gross proceeds (the "Proceeds") from the sale of the Property shall be paid directly to Seller for disbursement by the Seller to any claimants in accordance with the approval of the Bankruptcy Court (as hereinafter defined). Any valid lien or security interests in the Property shall be transferred from the Property to the Proceeds. All liens or security interests in the Property shall be null and void as to the Property upon appropriate Order of the Bankruptcy Court, and without the necessity of any separate cancellations or releases.

6.    Prorations and Adjustments to Purchase Price. The following prorations and adjustments shall be made between Purchaser and Seller at Closing, or thereafter if Purchaser and Seller shall agree:

18145556v1

(a)  All city, state and county ad valorem taxes and similar impositions levied or imposed upon or assessed against the Property, hereinafter called the "Taxes", for the year in which Closing occurs shall be prorated as of the Closing Date. In the event the Taxes for such year are not determinable at the time of Closing, such Taxes shall be prorated on the basis of the best available information and will not be prorated post-closing by Seller,

(b)  Any other items which are customarily prorated in connection with the purchase and sale of properties similar to the Property shall be prorated as of the Closing Date.

7.  [Intentionally omitted.]

8.  Disposal Systems and Water Source. Purchaser shall determine the Disposal System and Water Source on the above-described Property.

9.  Title Examination. Purchaser shall have a reasonable time after the date of this Agreement to examine title and to furnish Seller with a written statement of valid objections affecting the marketability of said title. Purchaser shall not be entitled to object to any of the following matters which affect title: a) zoning ordinances affecting the Property, b) general utility, sewer and drainage easements of record, c) subdivision easements of record, d) any other leases, easements restrictions or encumbrances specified in this Agreement, and (e) liens and encumbrances that will be divested as a result of the approval of this sale by the Bankruptcy Court. Seller shall have a reasonable time after receipt of such objections to satisfy all valid objections. If Seller fails to satisfy such valid objections within a reasonable time, then, at the option of Purchaser evidenced by written notice to Seller, this Agreement shall be null and void. Marketable title as used herein shall mean title which an insurance company licensed to do business in the State of Georgia will insure at its regular rates, subject only to standard exceptions otherwise specified herein. It is understood and agreed that the title herein required to be furnished by Seller shall be good and marketable, and marketability shall be determined in accordance with Georgia law as supplemented by the Title Standards of the State Bar of Georgia. It is agreed that any defect in the title which comes within the scope of any of said Title Standards shall not constitute a valid objection on the part of the Purchaser provided the Seller furnishes the affidavits or other title papers, if any, required in the applicable standard to cure such defect. It is further agreed that failure of Seller to cure any title objections shall not be deemed to be a default under this Agreement.

10.  Proceedings at Closing. On the Closing Date, the Closing shall take place as follows:

(a)  Seller shall deliver to Purchaser the following documents and instruments, duly executed by or on behalf of Seller: (i) a Trustee's Deed, in the form of, and on the terms and conditions set forth in, that attached hereto as Exhibit "A", conveying the Property by the legal description set forth in Paragraph 1 hereof; (ii) a Seller's Affidavit, in the form of, and on the terms and conditions set forth in, that attached hereto as Exhibit "B"; (iii) an affidavit of Seller's Residence in the form of and on the terms and conditions required by the Revenue Department for the State of Georgia; (iv) and such

other instruments as are normal and customary in a purchase and sale transaction of this type; and

(b)    Purchaser shall pay the Purchase Price to Seller in accordance with the provisions of this Agreement.

11.    Costs of Closing.  Purchaser shall pay the State of Georgia real estate transfer tax payable on this transfer of the Property.  Seller shall pay Seller's attorneys' fees.  Except as otherwise expressly set forth on Exhibit "C" attached hereto and by this reference made a part hereof, Purchaser shall pay all loan closing costs, as well as all recording costs, the premium for any owner's policy of title insurance issued in favor of Purchaser insuring Purchaser's title to the Property, the cost of any survey of the Land obtained by Purchaser and Purchaser's and any lender attorneys' fees.  All other costs and expenses of the transaction contemplated hereby shall be borne by the party incurring the same.

12.    Disclaimer of Warranties.  Except for the warranty of title to be included in the Trustee's Deed to be delivered to Purchaser by Seller, Seller does not, by the execution and delivery of this Agreement, and Seller shall not, by the execution and delivery of any document or instrument executed and delivered in connection with Closing, make any warranty, express or implied, of any kind or nature whatsoever, with respect to the Property, and all such warranties are hereby disclaimed.  Without limiting the generality of the foregoing, SELLER MAKES, AND SHALL MAKE, NO EXPRESS OR IMPLIED WARRANTY OF SUITABILITY OR FITNESS OF ANY OF THE PROPERTY FOR ANY PURPOSE, OR AS TO THE MERCHANTABILITY, TITLE, VALUE, QUALITY, QUANTITY, CONDITION OR SALABILITY OF ANY OF THE PROPERTY.  The sale of the Property by Seller to Purchaser hereunder shall be "AS IS" and "WHERE IS".

13.    Possession.  Seller shall surrender possession of the Property to Purchaser on the Closing Date, subject to the Permitted Exceptions.

14.    [Intentionally omitted.]

15.    Remedies.  [Intentionally omitted.]

16.    Damage or Destruction.  Should the Property be destroyed or substantially damaged before time of Closing, Seller, immediately upon his knowledge of such damage or destruction, shall notify the Purchaser and Broker. If Purchaser and Seller are unable to resolve the damage or destruction issue between them, Purchaser may request a refund of the Earnest Money and terminate the Agreement.

17.    Condemnation.  In the event of commencement of eminent domain proceedings or bona fide threat of such proceedings respecting any portion of the Property prior to Closing, Seller shall give Purchaser prompt written notice after Seller becomes aware thereof.  If, prior to Closing, all or any material part of the Property is taken by eminent domain proceedings, Purchaser shall have the right, at Purchaser's option, to terminate this Agreement by giving written notice to Seller on or before the date ten (10) days after the date upon which Seller gives Purchaser written notice of such taking, in which event the Earnest Money shall be refunded to Purchaser promptly upon

request, all rights and obligations of the parties under this Agreement shall expire, and this Agreement shall become null and void. In the event of a taking of less than all or a material part of the Property, Purchaser shall have no right to terminate this Agreement by reason of such taking; however, Seller shall assign to Purchaser all rights of Seller in and to the awards or other proceeds payable thereafter by reason of such taking.

18.     Association/Assessment Fees.    Purchaser shall determine if any mandatory association/assessment fees are payable. Seller makes no representation about any such association and/or assessment fees.

19.    Disclaimer.

(a)    **Independent Expert Advice.** Purchaser acknowledges that Purchaser has not relied upon the advice or representations of Seller or of Seller's agents, attorneys, or employees, with reference to any matter, including but not limited to: legal and tax consequences of this Agreement in the sale of the Property; the terms and conditions of financing; the purchase and ownership of the Property; the structural condition of the Property; the operating condition of the electrical, heating, air conditioning, plumbing, water heating systems, pool, spa and appliances in the Property; the availability of utilities to the Property; the investment potential or resale value of the Property; the availability and ownership of amenity package, if applicable; restrictive covenants and architectural controls; or any other system or condition enumerated in the "Inspection of Property" paragraph above; planned or proposed zoning; proposed or planned changes to or widening of roadways; or any other condition or circumstance which may adversely affect the Property. Purchaser acknowledges that if such, or similar, matters have been of concern to Purchaser, Purchaser has sought and obtained independent advice relative thereto. Purchaser acknowledges that Closing shall constitute acceptance of the Property.

(b)    **Property Conditions.** Purchaser acknowledges that various substances used in the construction of the improvements on the Property or otherwise located on the Property may now or in the future be determined to be toxic, hazardous or undesirable and may need to be specially treated, handled and /or removed from the Property. Persons who have an interest in the Property may be required by law to undertake the cleanup of such substances. Purchaser acknowledges that: Seller has no expertise with respect to toxic wastes, hazardous substances or undesirable substances; such substances can be extremely costly to correct and remove. Seller has made no investigations or representations with respect to such substances; and Seller shall have no liability to Purchaser regarding the presence of said substances on the Property. Purchaser releases Seller and Seller's agents, attorneys, and employees from any claim, rights of action or suits relating to the presence of any hazardous substances, toxic wastes, or undesirable substances on the Property.

18145556v1



20.    Assignment. This Agreement may not be assigned by Purchaser, in whole or in part, without the prior written consent of Seller. No assignment shall relieve Purchaser of liability for the performance of Purchaser's duties and obligations under this Agreement.

21.    Parties. This Agreement shall be binding upon and enforceable against, and shall inure to the benefit of, Purchaser and Seller and their respective heirs, legal representatives, successors and assigns. The parties acknowledge that Seller is a court-appointed Bankruptcy Trustee and has no independent knowledge of the Property and has never seen the Property.

22.    Broker and Commission. All negotiations relative to this Agreement and the purchase and sale of the Property as contemplated by and provided for in this Agreement have been conducted by and between Seller and Purchaser without the intervention of any person or other party as agent or broker other than Listing Broker and Selling Broker. Purchaser and Seller each represents and warrants to the other that, with the exception of any commission or fees provided for in the United States Bankruptcy Code, Title 11, United States Code, to be paid from Seller's proceeds, there are and there will be no agent's, broker's, or other intermediary's fees or commissions payable as a consequence of this transaction, and that they have not dealt with a broker, agent, or intermediary, who might by reason of such dealing have any claim for a fee, commission or other compensation with respect to the purchase and sale of the Property except for a fee of **six percent (6.0%)** of the Purchase Price that shall be divided and paid to Listing Broker and Selling Broker. Notwithstanding any provision to the contrary contained herein, any obligation of Seller to pay any fee described in this paragraph 22 shall be subject to Bankruptcy Court Approval of this Agreement as described in paragraph 31 hereof. Seller and Purchaser agree to indemnify, hold harmless, defend and protect the other from and against any and all claims for commissions, compensation, expense or charge of whatever nature, including but not limited to leasing commission, on the part of any broker, agent or other intermediary claiming by reason of any dealing with them except as set forth in this paragraph 22.

23.    Modification. This Agreement supersedes all prior discussions and agreements between Seller and Purchaser with respect to the purchase and sale of the Property and other matters contained herein, and this Agreement contains the sole and entire understanding between Seller and Purchaser with respect thereto. This Agreement shall not be modified or amended except by an instrument in writing executed by or on behalf of Seller and Purchaser.

24.    Applicable Law. This Agreement shall be governed by, construed under and interpreted and enforced in accordance with the laws of the United States of America and the State of Georgia. The parties agree that the Bankruptcy Court is a proper venue for any legal proceeding concerning this Agreement.

25.    Counterparts. This Agreement may be executed in several counterparts, each of which shall be deemed an original, and all of such counterparts together shall constitute one and the same instrument.

26.    Time. Time is and shall be of the essence of this Agreement.

27.    Captions. The captions and headings used in this Agreement are for convenience only and do not in any way restrict, modify or amplify the terms of this Agreement.

28.    Exhibits.  Each and every Exhibit referred to or otherwise mentioned in this Agreement is attached to this Agreement and is and shall be construed to be made a part of this Agreement by such reference or other mention at each point at which such reference or other mention occurs, in the same manner and with the same effect as if each Exhibit were set forth in full and at length every time it is referred to or otherwise mentioned.

29.    Notices.  All notices, requests, demands, tenders, and other communications under this Agreement shall be in writing.  Any such notice, request, demand, tender or other communication shall be deemed to have been duly given when actually delivered, or one (1) day after being delivered to a nationally recognized commercial courier for next day delivery, or when deposited in the United States Mail, Certified Mail, Return Receipt Requested, with all postage prepaid, to the address for each party set forth below its execution of this Agreement.  Rejection or other refusal to accept, or inability to deliver because of changed address of which no notice was given, shall be deemed to be receipt of such notice, request, demand, tender, or other communication.  Any party, by written notice to the others in the manner herein provided, may designate an address different from that stated above.

30.    Survival.  The provisions of paragraphs 12 and 19 of this Agreement, and the indemnification provisions of paragraphs 4 and 22 of this Agreement, shall survive the consummation of the purchase and sale of the Property on the Closing Date, the delivery of the deed and the payment of the Purchase Price.  Notwithstanding anything to the contrary set forth in this Agreement, the provisions of paragraphs 12 and 19 of this Agreement, and the indemnification provisions of paragraphs 4 and 22 of this Agreement shall also survive any termination of this Agreement in accordance with its terms.

31.    Bankruptcy Court Approval.  Notwithstanding any other provision in this Agreement to the contrary, this Agreement shall be subject to and contingent upon the approval of the Bankruptcy Court (herein the "Bankruptcy Court") in that certain case pending in the United States Bankruptcy Court for the Northern District of Georgia, Atlanta Division, under Case No. 21-55752-PMB (the "Bankruptcy Case") authorizing the sale of the Property free and clear of all liens and encumbrances in accordance with the terms of this Agreement and with same to the extent valid, enforceable and unavoidable attaching to the net sale proceeds.  In the event the Bankruptcy Court fails to approve this Agreement on or prior to the date which is forty-five (45) days from the date of this Agreement, Seller may by notice to Purchaser terminate this Agreement, whereupon the Earnest Money shall be promptly refunded to Purchaser except as provided hereinabove with respect to a Purchaser's default, and this Agreement shall become null and void and the parties shall be relieved of and released from any and all further rights, duties, obligations and liabilities hereunder.  Seller reserves the right to contest and compromise any real estate ad valorem tax liability for the Property.  Purchaser agrees to cooperate with Seller regarding same so long as Seller bears all costs and expenses in connection therewith.

32.    Home Warranty.  Purchaser may obtain a home warranty at Purchaser's expense.

33.    Locks Changed.  Purchaser shall change the locks to the Property at Purchaser's expense.



34.    <u>Counterparts.</u>  This Agreement may be executed in one or more counterparts, each of which is an original, and all of which constitute only one agreement between the Parties.  Counterparts of this Agreement also may be exchanged via electronic transmission such as facsimile machines or computer, and any Party's signature transmitted by such electronic transmission shall be deemed to be an original signature for all purposes.

35.    <u>Special Stipulations.</u>  The special stipulations, if any, attached hereto as **EXHIBIT "C"** if conflicting with any preceding paragraphs shall control; the preceding paragraphs shall not control.

36.    <u>Lead-Based Paint.</u>    Disclosure of information on lead-based paint and/or lead-based paint hazards in purchase and sale transactions, if any, is attached hereto as **EXHIBIT "D."**

This Agreement shall be open for acceptance **until 11:59 p.m. on May 13, 2022,** which acceptance date shall constitute the effective date of this Agreement.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement under seal, as of the day and year first written above.

Accepted by Seller this ⧵⧵ day of May, 2022.

SELLER:

_____ [SEAL]
S. GREGORY HAYS, AS AND ONLY AS
TRUSTEE IN BANKRUPTCY FOR THE
ESTATE OF NEW VISION REALTY &
INVESTMENTS, INC.

Initial address for notices:

c/o Arnall Golden Gregory LLP
171 17th Street, N.W.
Suite 2100
Atlanta, Georgia 30363

18145556v1

LISTING BROKER:
HUMPHRIES & KING REALTY, LLC
License No. H-76239

By: _____    [SEAL]

Printed Name: John Ball
License No. 386751
Title:        Realtor

830 Glenwood Avenue, Suite 510-205
Atlanta, GA 30316
Telephone: (404) 418-2772
Email: john@HKAtlanta.com

Accepted by Purchaser this ____ day of May, 2022.

PURCHASER:

Rezwanul Islam Rajib    [SEAL]
REZWANUL RAJIB

SELLING BROKER:
COLDWELL BANKER REALTY
License No. H-59730

By:

Tomekia Carter          05-12-2022
                        [SEAL]
Printed Name: Tomekia Carter
License No. 367687
Title:        Realtor

3050 Peachtree Road, Suite 500
Atlanta, GA 30305
Telephone: (404) 262-1658
Email: tomekia.carter@coldwellbankeratlanta.com

18145556v1


CS CamScanner

## PURCHASE AND SALE AGREEMENT

### Index to Exhibits

Exhibit "A"    -    Form of Trustee's Deed of Real Estate

Exhibit "B"    -    Form of Seller's Affidavit

Exhibit "C"    -    Special Stipulations (If Any)



## EXHIBIT "A"

### Form of Trustee's Deed of Real Estate



18145556v1

Return to:

Michael Campbell, Esq.
Campbell & Brannon, LLC
Glenridge Highlands Two
5565 Glenridge Connector
Suite 350
Atlanta, Georgia 30342

STATE OF GEORGIA

COUNTY OF FULTON

### TRUSTEE'S DEED OF REAL ESTATE

THIS INDENTURE, made this **14th** day of **June, 2022** between **S. GREGORY HAYS**, as and only as **Trustee in Bankruptcy for the Estate of NEW VISION REALTY & INVESTMENTS, INC.**, the Debtor, in a case now pending in the United States Bankruptcy Court for the Northern District of Georgia, Atlanta Division, under Case No. **21-55752-PMB**, filed on **August 2, 2021** (hereinafter called "Grantor"), and **REZWANUL RAJIB** (hereinafter called "Grantee").

Grantor, as owner of record and pursuant to his power as Trustee, as set forth in the copy of the Notice of Chapter 7 Bankruptcy Case, Meeting of Creditors, & Deadlines attached as **EXHIBIT "A"** and by virtue of the power and authority given in and by that Order (the "Sale Order") entered upon the Trustee's Motion to Sell Property Free and Clear of Liens Pursuant to 11 U.S.C. §363(b) and (f), which Sale Order was entered by the United States Bankruptcy Court for the Northern District of Georgia on **June __ 2022**, a copy of which is attached as **EXHIBIT B"**, and in consideration of TEN DOLLARS ($10.00), lawful money of the United States paid by the Grantee, receipt whereof is hereby acknowledged, and other good and valuable consideration, does hereby grant, bargain, sell, convey and release unto the Grantee, its heirs and assigns forever:

AS TO LOT 5:

ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LOT 195 OF THE 14TH DISTRICT OF FULTON COUNTY, GEORGIA, BEING LOT 5, UNIT ONE, DODSON VALLEY SUBDIVISION, AS PER PLAT DATED MAY 10, 1957, RECORDED IN PLAT BOOK 60, PAGE 96, FULTON COUNTY, GEORGIA RECORDS, BEING MORE PARTICULARLY DESCRIBED AS 2562 MEADOWLARK DRIVE, WHICH PLAT IS HEREBY INCORPORATED BY REFERENCE THERETO AND MADE A PART OF THIS DESCRIPTION.

_____
Grantor's Initials



AS TO LOT 6:

ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LOT 195 OF
THE 14TH DISTRICT OF FULTON COUNTY, GEORGIA, BEING LOT 6, DODSON
VALLEY SUBDIVISION, UNIT TWO, AS PER PLAT RECORDED AT PLAT BOOK 77,
PAGE 84, FULTON COUNTY, GEORGIA.

SAID PROPERTY KNOWN GENERALLY AS 2562 MEADOW LARK DRIVE, EAST
POINT, FULTON COUNTY, GEORGIA 30344.

TAX ID NUMBER: 14-0195-0006-031-5

with the appurtenances and all of the estate which said Debtor, **NEW VISION REALTY &
INVESTMENTS, INC.,** had in said premises at the time of the filing of its Voluntary Petition for Relief
in the United States Bankruptcy Court for the Northern District of Georgia, and also the estate therein which
the Grantor had or has power to convey or dispose of as Trustee in Bankruptcy for said Debtor, **NEW
VISION REALTY & INVESTMENT, INC.,** pursuant to the Sale Order (collectively the "Property").

TO HAVE AND TO HOLD the Property herein granted unto the Grantee, its heirs and assigns
forever.

IN WITNESS WHEREOF, Grantor has hereunto set his hand and seal the day and year first above
written.

GRANTOR:

Signed, sealed and delivered on
the 14th day of June, 2022, in
the presence of:

_____[SEAL]
**S. GREGORY HAYS,** as and only as
Trustee in Bankruptcy for the Estate of **NEW
VISION REALTY & INVESTMENT,
INC.,** pursuant to the Bankruptcy Court Order
Authorizing the Sale of the Property

_____
Unofficial Witness

_____
Notary Public
My Commission Expires: _____



## TRUSTEE'S DEED OF REAL ESTATE

### Index to Exhibits

Exhibit "A"    -    Notice of Chapter 7 Bankruptcy Case, Meeting of Creditors & Deadlines

Exhibit "B"    -    Sale Order



## EXHIBIT "A" of TRUSTEE'S DEED OF REAL ESTATE

## Notice of Chapter 7 Bankruptcy Case, Meeting of Creditors & Deadlines



18145556v1

**Information to identify the case:**

| | | | |
|---|---|---|---|
| Debtor | **New Vision Realty & Investments, Inc.** | EIN | **46−1622334** |
| | Name | | |

United States Bankruptcy Court  **Northern District of Georgia**
Court website: www.ganb.uscourts.gov

Date case filed for chapter  **7**   8/2/21

Case number:  **21−55752−pmb**

## Official Form 309C (For Corporations or Partnerships)

## Notice of Chapter 7 Bankruptcy Case −− No Proof of Claim Deadline      10/20

For the debtor listed above, a case has been filed under chapter 7 of the Bankruptcy Code. An order for relief has been entered.

This notice has important information about the case for creditors, debtors, and trustees, including information about the meeting of creditors and deadlines.

The filing of the case imposed an automatic stay against most collection activities. This means that creditors generally may not take action to collect debts from the debtor or the debtor's property. For example, while the stay is in effect, creditors cannot sue, assert a deficiency, repossess property, or otherwise try to collect from the debtor. Creditors cannot demand repayment from debtors by mail, phone, or otherwise. Creditors who violate the stay can be required to pay actual and punitive damages and attorney's fees.

To protect your rights, consult an attorney. All documents filed in the case may be inspected at the bankruptcy clerk's office at the address listed below or through PACER (Public Access to Court Electronic Records at https://pacer.uscourts.gov). Copy fees or access charges may apply. A free automated response system is available at 866−222−8029 (Georgia Northern). You must have case number, debtor name, or SSN when calling.

**The staff of the bankruptcy clerk's office cannot give legal advice.**

Do not file this notice with any proof of claim or other filing in the case.

| | | |
|---|---|---|
| 1. **Debtor's full name** | New Vision Realty & Investments, Inc. | |
| 2. **All other names used in the last 8 years** | | |
| 3. **Address** | 3645 Marketplace Blvd<br>Unit 130−593<br>Atlanta, GA 30344 | |
| 4. **Debtor's attorney**<br>Name and address | Nicole Carson<br>The Carson Firm, LLC<br>225 Arthur Drive<br>McDonough, GA 30252 | Contact phone (404) 782−2347<br><br>Email  nicole@bk−attorneys.com |
| 5. **Bankruptcy trustee**<br>Name and address | S. Gregory Hays<br>Hays Financial Consulting, LLC<br>Suite 555<br>2964 Peachtree Road<br>Atlanta, GA 30305 | Contact phone (404) 926−0060 |
| 6. **Bankruptcy clerk's office**<br>Documents in this case may be filed at this address. You may inspect all records filed in this case at this office or online at https://pacer.uscourts.gov. | M. Regina Thomas<br>Clerk of Court<br><br>1340 United States Courthouse<br>75 Ted Turner Drive SW<br>Atlanta, GA 30303 | Office Hours:  8:00 a.m. − 4:00 p.m.<br><br>Court website: www.ganb.uscourts.gov<br><br>Contact phone 404−215−1000 |
| 7. **Meeting of creditors**<br>The debtor's representative must attend the meeting to be questioned under oath. Creditors may attend, but are not required to do so. Cellular phones and other devices with cameras are not allowed in the building. | September 1, 2021 at 12:30 PM<br><br>The meeting may be continued or adjourned to a later date. If so, the date will be on the court docket. | Location:<br><br>Meeting will be telephonic. To attend, Dial:<br>866−909−7148 and enter: 4958999, when prompted for participation code. |
| 8. **Proof of claim**<br>Please do not file a proof of claim unless you receive a notice to do so | No property appears to be available to pay creditors. Therefore, please do not file a proof of claim now.<br><br>If it later appears that assets are available to pay creditors, the clerk will send you another notice telling you that you may file a proof of claim and stating the deadline. | |
| 9. | | |

| **Creditors with a foreign address** | If you are a creditor receiving a notice mailed to a foreign address, you may file a motion asking the court to extend the deadlines in this notice. Consult an attorney familiar with United States bankruptcy law if you have any questions about your rights in this case. |
| --- | --- |

Official Form 309C (For Corporations or Partnerships) **Notice of Chapter 7 Bankruptcy Case -- No Proof of Claim Deadline**                              page 1



EXHIBIT "B" of TRUSTEE'S DEED OF REAL ESTATE

Sale Order



**EXHIBIT "B"**

**Seller's Affidavit**

18145556v1



STATE OF GEORGIA
COUNTY OF FULTON

### SELLER'S AFFIDAVIT

The undersigned, being duly sworn, states:

That the undersigned is the duly authorized and appointed Trustee in Bankruptcy for the Estate of **NEW VISION REALTY & INVESTMENT, INC.**, United States Bankruptcy Court for the Northern District of Georgia, Atlanta Division, **Case No. 21-55752-PMB**, subject to a bankruptcy court order authorizing the sale of the Property described hereafter ("Seller") and is duly authorized to execute this affidavit;

That Seller, in his capacity as the Bankruptcy Trustee, is the owner of the real property described in **Exhibit "A"** attached hereto and incorporated herein by reference (the "Property");

That Seller has never seen the Property and makes no warranties or representations in regard thereto. Seller has no knowledge of any disputes concerning the location of the lines and corners of the Property;

That Seller has no knowledge of any improvements or repairs which have been made by or at the instance of Seller on the Property during the three (3) months immediately preceding the date of this affidavit and has never seen the Property;

That, except for the matters set forth on **Exhibit "B"** attached hereto and incorporated herein by reference, to the best of the knowledge of the undersigned, in his capacity as the Bankruptcy Trustee, there are no outstanding indebtedness for or liens against any equipment or fixtures attached to, installed on, the Property or any improvements thereon;

That, to the best of the knowledge of Seller, there are no pending suits, proceedings, judgments, other bankruptcies, liens or executions against Seller, in his capacity as the Bankruptcy Trustee, which affect title to the Property, the improvements thereon or the fixtures attached thereto; and

That Seller is making this affidavit with the knowledge that it will be relied upon by **REZWANUL RAJIB** in purchasing the Property from Seller and by purchaser's lender in making a loan on the Property and by a title insurance company insuring the status of title to the Property.

Sworn to and subscribed before me
this 14th day of June, 2022

_____
Notary Public
My Commission expires: _____

_____[SEAL]
**S. GREGORY HAYS**, as and only as Trustee in Bankruptcy of the Estate of **NEW VISION REALTY & INVESTMENTS, INC.**, pursuant to Bankruptcy Court Order Authorizing the Sale of the Property



## SELLER'S AFFIDAVIT

### Index to Exhibits

Exhibit "A"    -    Legal Description of the Property

Exhibit "B"    -    Permitted Exceptions



## EXHIBIT "A"

### Legal Description of the Property

AS TO LOT 5:

ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LOT 195 OF THE 14TH DISTRICT OF FULTON COUNTY, GEORGIA, BEING LOT 5, UNIT ONE, DODSON VALLEY SUBDIVISION, AS PER PLAT DATED MAY 10, 1957, RECORDED IN PLAT BOOK 60, PAGE 96, FULTON COUNTY, GEORGIA RECORDS, BEING MORE PARTICULARLY DESCRIBED AS 2562 MEADOWLARK DRIVE, WHICH PLAT IS HEREBY INCORPORATED BY REFERENCE THERETO AND MADE A PART OF THIS DESCRIPTION.

AS TO LOT 6:

ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LOT 195 OF THE 14TH DISTRICT OF FULTON COUNTY, GEORGIA, BEING LOT 6, DODSON VALLEY SUBDIVISION, UNIT TWO, AS PER PLAT RECORDED AT PLAT BOOK 77, PAGE 84, FULTON COUNTY, GEORGIA.

SAID PROPERTY KNOWN GENERALLY AS 2562 MEADOW LARK DRIVE, EAST POINT, FULTON COUNTY, GEORGIA 30344.

TAX ID NUMBER: 14-0195-0006-031-5

18145556v1

## EXHIBIT "B"

### Permitted Exceptions

1. *Ad valorem* real property taxes and assessments outstanding, and the Estate's pro-rated share of 2022.

2. The Estate's 2022 pro-rate share of homeowner association assessments, if any.

3. All other matters disclosed by the public records.

4. Zoning ordinances affecting the property.



## EXHIBIT "C"

### Special Stipulations

1. Purchaser understands the Property is being sold "as is, where is" and waives the right to request repairs.

2. Purchaser understands there is no disclosure statement included as part of this Agreement.

3. Purchaser shall have the right and responsibility to procure a survey of the Property.

4. Purchaser has tendered the earnest money to the closing attorney, Campbell & Brannon, LLC in the amount of EIGHT THOUSAND TWO HUNDRED AND NO/100S DOLLARS ($8,200.00).

5. This Agreement is subject to no contingencies. All contingencies have been met.

6. Seller will pay none of Purchaser's closing costs.

7. Subject to approval of the sale by the Bankruptcy Court, the closing on the sale will take place on or before June 14, 2022, or within ten (10) days following the Bankruptcy Court approval.

18145556v1



ditbop signature verification



**COLDWELL BANKER REALTY**

# DISCLOSURE OF INFORMATION ON LEAD-BASED PAINT AND/OR LEAD-BASED PAINT HAZARDS IN PURCHASE AND SALE TRANSACTIONS ("LEAD-BASED PAINT EXHIBIT")

### EXHIBIT " D "

*Georgia* REALTORS

**2022 Printing**

This Exhibit pertains to that certain Property known as:  2562 Meadow Lark Drive    East Point , Georgia 30344

**UNDER FEDERAL LAW, THIS EXHIBIT MUST BE SIGNED BY THE SELLER AND BUYER, AND THE BUYER PROVIDED WITH A COPY OF THE LEAD-BASED PAINT BROCHURE PRIOR TO THE BUYER AND SELLER ENTERING INTO A BINDING AGREEMENT. THIS AGREEMENT MUST BE FILLED OUT FOR ALL HOUSING BUILT PRIOR TO 1978.**

### Disclosure of Information on Lead-Based Paint and/or Lead-Based Paint Hazards

**Hazards Lead Warning Statement**
*Every buyer of any interest in residential property on which a residential dwelling was built prior to 1978 is notified that such property may present exposure to lead from lead-based paint that may place young children at risk of developing lead poisoning. Lead poisoning in young children may produce permanent neurological damage, including learning disabilities, reduced intelligence quotient, behavioral problems, and impaired memory. Lead poisoning also poses a particular risk to pregnant women. The seller of any interest in residential real property is required to provide the Buyer with any information on lead-based paint hazards from risk assessments or inspections in the Seller's possession and notify the Buyer of any known lead-based paint hazards. A risk assessment or inspection for possible lead-based paint hazards is recommended prior to purchase.*

**Seller's Disclosure**

(a) Presence of lead-based paint and/or lead paint hazard *[initial (i) or (ii) below. The section not initialed shall not be part of this Exhibit]*

(i) _____ Known lead-based paint and/or lead-based paint hazards are present in the housing (explain below):

_____

☐ Check box if additional pages of explanations are attached and incorporated herein.

(ii) _____*SGM*_____ Seller has no knowledge of lead-based paint and/or lead-based paint hazards in the housing.

(b) Records and Reports available to the Seller *[initial (i) or (ii) below. The section not initialed shall not be part of this Exhibit].*

(i) _____ Seller has provided the Buyer with all the available records and reports pertaining to lead-based paint and/or lead based paint hazards in the housing (list document below):

_____

(ii) _____*SGM*_____ Seller has no reports or records pertaining to lead-based paint and/or lead-based paint hazards in the housing.

**Buyer's Acknowledgment** *[initial all applicable sections below]:*

(c) _____ Buyer has received copies of all information, if any, listed above.

(d) _____*RR*_____ Buyer has received the pamphlet *Protect Your Family from Lead in Your Home*

(e) Buyer has: *[initial (i) or (ii) below].*

(i) _____ Received a ten (10) day opportunity (or mutually agreed upon period) to conduct a risk assessment or inspection for the presence of lead-based paint and/or lead-based paint hazards (prior to Buyer being obligated under the Purchase and Sale Agreement); or

(ii) ( _*RR*_ ) _____ Waived the opportunity to conduct a risk assessment or inspection for the presence of lead-based paint and/or lead-based paint hazards (which shall not prevent Buyer from evaluating the Property for lead-based paint and lead-based paint hazards during any Due Diligence or Right to Request Repairs Period).

THIS FORM IS COPYRIGHTED AND MAY ONLY BE USED IN REAL ESTATE TRANSACTIONS IN WHICH  Tomekia Carter  IS INVOLVED AS A REAL ESTATE LICENSEE. UNAUTHORIZED USE OF THE FORM MAY RESULT IN LEGAL SANCTIONS BEING BROUGHT AGAINST THE USER AND SHOULD BE REPORTED TO THE GEORGIA ASSOCIATION OF REALTORS® AT (770) 451-1831.
Copyright© 2022 by Georgia Association of REALTORS®, Inc.    F316, Lead-Based Paint Exhibit, Page 1 of 2, 01/01/22

dotloop signature verification

**Agent's Acknowledgment** (Agent who informed Seller of Seller's Obligations should initial).

(f) _____ Seller's Agent has informed the Seller of the Seller's obligations under 42 U.S.C. § 4852(d) and is aware of his/her responsibility to ensure compliance

**Certification of Accuracy**

The following parties have reviewed the information above and certify, to the best of their knowledge, that the information they have provided is true and accurate.

| _Rezwanul Rajib_ | 4/6/2022 | _S Gregory Hays as Chapter 7 Trustee, in the bankruptcy case for New Vision Realty & Investments_ | dotloop verified 04/12/22 1:25 PM EDT 0FXX-UWUR-KFH2-KVG1 |
|---|---|---|---|
| 1 Buyer's Signature | Date | 1 Seller's Signature | Date |

Rezwanul Rajib
Print or Type Name

S. Gregory Hays, as Chapter 7 Trustee for the bankruptcy case of New Vision Realty & Investments, Inc.
Print or Type Name

| 2 Buyer's Signature | Date | 2 Seller's Signature | Date |
|---|---|---|---|

Print or Type Name

Print or Type Name

☐ Additional Signature Page (F267) is attached.

☐ Additional Signature Page (F267) is attached.

| _Tomekia Carter_ | 4/5/2022 | _John Ball_ | dotloop verified 04/12/22 3:25 PM EDT 6W3T-4JWX-ZEVS-NUHE |
|---|---|---|---|
| Buyer's Agent Signature | Date | Seller's Agent Signature | Date |

Tomekia Carter
Print or Type Name

John Ball
Print or Type Name

Coldwell Banker Realty
Buyer Brokerage Firm

Humphries & King Realty, LLC.
Seller Brokerage Firm

## CERTIFICATE SERVICE

This is to certify that I, Michael J. Bargar, am over the age of 18 and that on this day I have caused to be served a copy of the forgoing *Trustee's Motion for Authority to (A) Sell Property of the Bankruptcy Estate Free and Clear of All Liens, Interests and Encumbrances, and (B) Disburse Certain Proceeds at Closing* by depositing in the United States mail a copy of same in a properly addressed envelope with adequate postage affixed thereon to assure delivery by first class United States Mail, and certified mail as indicated, to the following persons at the addresses stated:

***Via First Class Mail:***

Office of the United States Trustee
362 Richard B. Russell Bldg.
75 Ted Turner Drive, SW
Atlanta, GA 30303

S. Gregory Hays
Chapter 7 Trustee
Hays Financial Consulting, LLC
Suite 555
2964 Peachtree Road
Atlanta, GA 30305

KRT Properties, LLC
c/o Victoria Kealy
The Wright Law Firm
50 Lenox Point, NE, Suite B
Atlanta, GA 30324

KRT Properties, LLC
c/o Roy Reeves, Registered Agent
591 South Main Street
Moultrie, GA 31768

Roy Reeves, Manager
KRT, Properties, LLC
P.O. Box 98
Moultrie, GA 31776

Normandy Capital Trust
c/o Gwendolyn J. Godfrey
Polsinelli PC
1201 West Peachtree Street, NW
Suite 1100
Atlanta, GA 30309

Normandy Capital Trust
c/o Austin E. James
Fidelity National Law Group
Suite 475
4170 Ashford Dunwoody Road
Atlanta, GA 30319

Normandy Capital Trust
c/o Wilmington Savings Fund Society, FSB,
Registered Agent
500 Delaware Avenue 11th Floor
Wilmington, DE 19801

Internal Revenue Service
c/o United States Attorney's Office
600 Richard B. Russell Federal Building
75 Ted Turner Drive, SW
Atlanta, Georgia 30303-3309

Internal Revenue Service
P. O. Box 7346
Philadelphia, PA 19101-7346

Internal Revenue Service
c/o Special Assistant United States Attorney
401 West Peachtree Street, NW
Stop 1000-D
Atlanta, Georgia 30308

Internal Revenue Service
Insolvency Unit
401 West Peachtree Street, NW
Stop 334-D
Atlanta, Georgia  30308

Internal Revenue Service
c/o Department of Justice, Tax Division
Civil Trial Section, Southern Region
Post Office Box 14198
Ben Franklin Station
Washington, D.C. 20044

Internal Revenue Service
Centralized Insolvency Operation
Post Office Box 21126
Philadelphia, PA  19114-0326

United States Attorney General
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530-0001

Georgia Department of Revenue
Bankruptcy Section
Post Office Box 161108
Atlanta, Georgia  30321

Georgia Department of Revenue
Taxpayer Services
Post Office Box 1054990
Atlanta, Georgia  30348

Georgia Department of Revenue
Sales and Use Tax
Post Office Box 105296
Atlanta, Georgia 30348

Office of the Attorney General
40 Capitol Square, SW
Atlanta, GA 30334

Dr. Arthur Ferdinand
Fulton County Tax Commissioner
141 Pryor Street, Suite 1106
Atlanta, GA 30303

Damika Pitts, Tax Tag Supervisor
Fulton County Tax Commissioner
141 Pryor Street, Suite 1106
Atlanta, GA 30303

City of East Point
2757 East Point Street
East Point, GA 30344

Nicole Carson
The Carson Law Group, LLC
225 Arthur Drive
McDonough, GA 30252

New Vision Realty & Investments, Inc.
3645 Marketplace Boulevard
Unit 130-593
Atlanta, GA 30344

Michael Campbell
Attention: Denise Hammock
Campbell & Brannon, LLC
5565 Glenridge Connector, Suite 350
Atlanta, GA 30342

***Via First Class Mail and Certified Mail:***

Roy Reeves, Manager
KRT Properties, LLC
591 South Main Street
Moultrie, GA 31768

This 12th day of May, 2022.

/s/ Michael J. Bargar
Michael J. Bargar
Georgia Bar No. 645709